Colt *v.* Ives.

———•◄●►•———

## ELIZABETH H. COLT *vs.* NATHAN B. IVES AND OTHERS.

Whether, where the by-laws of a corporation, authorized by the charter, require transfers of its stock to be made on the books of the company, a separate written assignment of stock conveys the legal title or only an equitable one : *Quere.*

Even if it conveys only an equitable title, yet this title is good in equity against an attachment afterwards made by a creditor of the vendor, where the assignment is made in good faith, and the parties have done what they could in the circumstances to perfect the title of the vendee.

Where stock of the vendor had been attached by a prior attaching creditor, and the secretary of the company refused, on the application of the vendor, to allow a transfer on the books of the company of the stock so attached, and the vendor thereupon, in good faith, made a written assignment of the stock by a separate instrument, and lodged it with the secretary, it was held that the title of the vendee was good against later attachments of the stock by the creditors of the vendor.

Colt *v.* Ives.

The ground upon which stock sold but not legally transferred is open to attachment by the creditors of the vendor, is the same upon which personal chattels sold, but retained in the possession of the vendor, are liable to attachment as the property of the latter: and the same circumstances that would excuse the failure to take possession in the one case, will excuse the failure to perfect the transfer in the other.

An attaching creditor, by the present policy of our law, is regarded with less favor than formerly, when an attachment of a debtor's property was the only mode of compelling an appropriation of it to the payment of his debts. This is especially so in view of the fact that an attaching creditor gains a preference over other creditors, while the policy of our law, as expressed in our insolvent acts, favors an equal distribution of the effects of a debtor among his creditors.

BILL in equity, for an injunction against the levy of executions by the respondents, upon forty-nine shares of the capital stock of the Hartford and New Haven Railroad Company, attached by them as the property of William Jarvis, and which were claimed by the petitioner under a previous assignment of the same from the said Jarvis. The suit was originally brought by the petitioner with her husband, Samuel Colt, but he having died during its pendency, it was pursued by her alone.

The superior court made a special finding of the following facts :—

On the 24th of February, 1846, William Jarvis was appointed guardian of the petitioner, Elizabeth H. Colt, who was his daughter, and was then a minor and unmarried. At that time there came into his hands as guardian $5,000 in cash as a part of her estate, no part of the principal of which had since been paid over to her. The petitioner was married on the 5th of June, 1856. At this time the principal of this fund had been invested by the guardian in common with moneys of his own, in stocks and other securities, and it was agreed between them, a short time before her marriage, the petitioner being then of full age, that she should select, in payment of the $5,000, from any of the stocks then owned by him, such an amount as at the par value would be equal to that sum. She thereupon selected the stock of the Hartford and New Haven Railroad Company, and Mr. Jarvis assented thereto, but the stock was not at that time transferred to her, though an instrument in writing for the purpose of transferring it was

Colt *v.* Ives.

drawn, but remained unexecuted. Afterwards, on the 10th of August, 1857, the stock so intended to be transferred to her was attached at the suit of the Middletown Savings Bank as the property of Mr. Jarvis. Mr. Jarvis, not knowing that the stock was about to be attached, had on the same day gone to Hartford for the purpose of transferring it in pursuance of the agreement, but learning that the same had been attached about an hour before his arrival, and believing that the attachment would soon be removed, he deferred transferring it to the petitioner at that time. Afterwards, on the 16th of September, 1857, Mr. Jarvis transferred forty-nine shares of the stock, subject to the attachment to the petitioner, by the following instrument executed by him :—

" For value received of Elizabeth H. Colt, of the city and county of Hartford, I hereby assign and transfer unto the said Elizabeth H. Colt all my right, title and interest in and to forty-nine shares of the capital stock of the Hartford and New Haven Railroad Company, now standing in my name on the books of said company. Said stock is now subject to an attachment in favor of the Middletown Savings Bank for the sum of five thousand dollars. And I appoint, authorize and empower, as my attorney, H. Fitch, Esq., of said city of Hartford, for me and in my name to transfer said stock to said Elizabeth H. Colt on the books of said company. In witness whereof, I have hereunto set my hand and seal, this sixteenth day of September, 1857.          WILLIAM JARVIS, (Seal.) "
" Witness,   S. P. Conner."

On the same day he placed the instrument in the hands of Horatio Fitch, then secretary of the company, for record, and for whatever might be needful in relation thereto, according to the by-laws of the company, and at the same time surrendered the certificate of stock which he held ; but the president of the company then, and at all times thereafter before the bringing of the present petition, declined to permit the instrument to be recorded, or any transfer to be made on the books of the company, because the shares had been attached as before stated ; and the secretary declined for this reason to act further in the premises than to enter on the certificate and trans-

fer the time when the same were received, and the instrument was not at the time of the attachments of the respondents recorded upon the books of the company. The instrument of transfer was drawn in all respects according to law, and according to the by-laws of the company, and the original certificate was duly surrendered to the company, and the president and secretary had no excuse for not permitting the transfer to be recorded, unless the facts stated constitute in law such an excuse.

The charter of the company provided that the stock of the company should " be transferred in such manner as the by-laws of said company [should] direct." The by-law of the company with regard to the transfer of stock was as follows:—

" 9th. Regular transfer books shall be kept by the secretary, at the office of the company in Hartford only, and certificates of stock such as are now in use, shall be issued, signed by the president and countersigned by the secretary. No transfer shall be permitted but by stockholders in person, or by power of attorney duly attested by at least one witness, and no transfer shall be permitted but on the surrender of the certificate which had been issued therefor, unless bonds of indemnity, approved by the board, are given."

The stock remained subject to the attachment of the Middletown Savings Bank until the 27th of March, 1858, when, judgment having been recovered and execution satisfied from other property, the attachment was determined, and the stock was then free from all incumbrances prior in date to the assignment to the petitioner; but the company still refused to cause the transfer to be recorded upon their books, on the ground that the stock had, subsequently to the assignment, been attached by the respondent Ives, whose suit was then pending. The judgment obtained on this attachment had, since the bringing of the present petition, been otherwise satisfied.

Afterwards, on the 17th of December, 1858, writs of attachment were levied on the stock, as the property of Mr. Jarvis, by leaving copies thereof with the secretary of the company by the officer serving the same, at the suits respectively of Truman French and Edward S. Rowland, two of the respond-

Colt *v.* Ives.

ents, each of whom placed a writ of attachment in the hands of Westell Russell, deputy sheriff of Hartford county, with instructions to attach the stock on each of the writs.   According to their instructions the said Russell repaired to the office of the company at Hartford, and inquired of the secretary in regard to the title to the stock, and was then informed by the secretary that the stock stood on the books of the company in the name of Mr. Jarvis, but that he, the secretary, then held and had held for some time an assignment of the same to the petitioner, and a power of attorney from Mr. Jarvis to transfer the stock to her on the books of the company; but notwithstanding this notice the said Russell levied attachments on the same, and afterwards, on the 11th day of February, 1859, left a copy of each of the writs of attachment with Mr. Jarvis.

Afterwards, on the 20th of December, 1858, a writ of attachment was levied on the stock as the property of Mr. Jarvis, at the suit of George K. Whiting, one of the respondents, who placed a writ of attachment in the hands of David S. Fowler, deputy sheriff of Hartford county, and instructed him to attach the stock.   Before making the attachment Fowler applied to Mr. Fitch, the secretary of the company, for information as to the condition of the title to the stock, and received the same statement from Mr. Fitch that had before been given to deputy sheriff Russell; but Fowler nevertheless attached the stock upon the writ which he held.

The respondents French, Rowland and Whiting, claimed to have obtained a lien on the stock by virtue of their several attachments, and claimed the right to levy their executions on the stock, and to sell the same for the payment of their respective claims against Mr. Jarvis.

Upon the foregoing facts the case was reserved for the advice of this court.

*Baldwin* and *McFarland,* for the petitioner.

The petitioner acquired a perfect title to the stock by the transfer made by Mr. Jarvis and by the effort to get it recorded on the books of the railroad company.   She could not be prevented from acquiring a perfect title by the act of the

secretary of the company in refusing to allow the transfer to be made on the books of the company, unless there was some positive law requiring the cooperation of the company or its officers in the transfer, or fixing the precise mode in which alone a transfer could be made. In the absence of any such law the transfer can be made in any mode good at common law. *Buckley* v. *Derby Fishing Co.*, 2 Conn., 252; *Eames* v. *Wheeler*, 19 Pick., 444. There was no such general law and there is nothing to that effect in the charter of the company. The charter provides merely that the shares " shall be transferred *in such manner as the by-laws of said company shall direct.*" 2 Private Acts, 1002. And the by-laws merely provide that " regular transfer books shall be kept by the secretary at the office of the company in Hartford only." The case then differs widely from those relied upon by the other side, in which it has been held to be the law of this state that where the charter of a company provides a specific mode of making transfers the legal title can be conveyed only by transfers made in that mode. Ang. & Ames on Corp., § 353. *Pinkerton* v. *Manchester & Lawrence R. R. Co.*, 1 Am. Law Reg., Dec. 1861, p. 96.

If the by-law is to be regarded as implying that the transfers were to be made only on the books of the company, then we say that such a restriction upon the transfer of stock is not to be made out by mere implication. Such restrictions are not to be favored. Indeed a corporation can not have power, under a mere general provision of its charter authorizing it by its by-laws to regulate the mode of transferring its stock, to pass a by-law which shall deprive the stockholder of the power to transfer his stock. The stock is property in its nature assignable, and the ordinary incident of property attaches to it— that the owner may sell it. If the sale can be effected only by a transfer on the books of the company, then, if the company refuse to allow the transfer to be made, they take away his power over his own property. If the company have power to pass such a by-law, then the secretary has no right to refuse to allow the transfer. He has an official duty to perform, like the duty of a town clerk to record a deed, and if he

refuses to perform that duty the stockholder, who does all that he can do, is not to suffer. The transfer is found to have been drawn in the form prescribed and used by the company and according to the by-laws. It was then complete in itself, and when Mr. Jarvis left it with the secretary he had done all his duty. Ang. & Ames on Corp., § 354. *McLellan* v. *Whitney*, 15 Mass., 138.

That a transfer in these circumstances conveyed the legal title is held in other states. *Quiner* v. *Marblehead Ins. Co.*, 10 Mass., 476, 482; *Sargent* v. *Essex Marine Railway Co.*, 9 Pick., 202; *Plymouth Bank* v. *Bank of Norfolk*, 10 id., 458; *Bank of Utica* v. *Smalley*, 2 Cowen, 770.

But it is not necessary to hold that such a transfer conveys the legal title. It is enough if, as it clearly does, it vests an equitable title in the purchaser. Such a title will be protected by a court of chancery against all persons chargeable with notice. *Bank of Utica* v. *Smalley*, supra; *Black* v. *Zackarie*, 3 Howard, 513; *Gilbert* v. *Manchester Iron Co.*, 11 Wend., 628; *Vansands* v. *Middlesex County Bank*, 26 Conn., 144. Here the notice was sufficient. Mr. Jarvis had done all that he could do in leaving written notice with the secretary. If any person had inquired at the office he would have ascertained the fact. This would be enough if actual notice was not received. But here the officer received actual notice before the attachment. He was the agent of the plaintiffs in the attachment for the purpose of receiving such notice. *Young* v. *Walker*, 12 N. Hamp., 502; *Hovey* v. *Blanchard*, 13 id., 146; *Felker* v. *Emerson*, 17 Verm., 101; *Donham* v. *Wild*, 19 Pick., 520; *Starr* v. *Moore*, 3 McLean, 354; *N. Haven Saw Mill Co.* v. *Fowler*, 28 Conn., 111.

Equity will not refuse to interfere on the ground that the matter is one of personal property merely. Chancery will in many cases even decree a specific performance, although the property is personal, and compensation could be made in damages. *Bank of Alexandria* v. *Seton*, 1 Peters, 299, 305; *Cowles* v. *Whitman*, 10 Conn., 121.

*T. C. Perkins* and *C. E. Perkins*, for the respondents.

This is a question between parties having equitable claims to a certain fund, as to which shall have the fund. In such a case the party who has the law in his favor must prevail and a court of equity will not interfere. 1 Story Eq. Jur., § 64 c. *Chamberlain* v. *Thompson*, 10 Conn., 243.

The respondents have the law in their favor, and have the legal title as it was in Jarvis at the time of their attachment. *Vansands* v. *Middlesex County Bank*, 26 Conn., 144. They would have had the legal title absolutely vested in them under their execution, if the court had not interfered by injunction. So far as this case and these parties are concerned therefore, they are to be considered as actually having the legal title vested in them.

The petitioner has no equities as against us which should entitle her to a decree. The fair construction of the by-law is that the stock can only be transferred on the books of the railroad company. In such cases the rule is well settled in Connecticut, that a transfer on the books is the only mode by which any interest can be conveyed as against creditors. *Marlborough Manufacturing Co.* v. *Smith*, 2 Conn., 579 ; *Northrop* v. *Newtown & Bridgeport Turnpike Co.*, 3 id., 544 ; *Northrop* v. *Curtis*, 5 id., 246 ; *Oxford Turnpike Co.* v. *Bunnell*, 6 id., 552 ; *Richmondville Manufacturing Co.* v. *Prall*, 9 id., 487 ; *Dutton* v. *Connecticut Bank*, 13 id., 493 ; *Shipman* v. *Aetna Ins. Co.*, 29 id., 245 ; *U. States* v. *Cutts*, 1 Sumner, 133 ; Ang. & Ames on Corp., § 576. Other proceedings purporting to transfer stock are of no effect at all, and creditors can proceed even with notice. It is like a parol sale of real estate, notice of which would not affect creditors. In this case however the respondents had no notice. The officer was in no respect their agent. He was bound to proceed and attach the stock under all circumstances, and would have been personally liable if he had not. *Watson* v. *Watson*, 9 Conn., 140. He was not bound to notify the respondents, and in fact did not. They had in fact neither actual nor implied notice.

It is claimed that the company ought to have allowed a transfer of the stock on the books, and that as they refused to do so, the petitioner having done all she could should not

suffer, but should have the same stock now transferred to her. But even granting that the company ought so to have done, the remedy of the petitioner is not in equity but at law. Equity will not interfere to enforce a transfer of personal property, but will leave the party to his remedy at law. *Cowles* v. *Whitman,* 10 Conn., 121. Ang. & Ames on Corp., § 381. *Kortright* v. *Buffalo Commercial Bank,* 20 Wend., 91. But the company were not bound to transfer the stock, as it was incumbered at the time by attachments.

HINMAN, C. J. The attaching creditors, who are the real parties in interest in this cause, assume that by a course of decisions in Connecticut, stock in a corporation is held to be so peculiar in its nature and character that no transfer can be made of it, or even any equitable interest acquired in it, as against attaching creditors, unless by an actual transfer made upon the corporation books, or recorded in them, in the mode prescribed by the charter or by-laws of the institution ; and the cases of *The Marlborough Manufacturing Co.* v. *Smith,* 2 Conn., 579, *Northrop* v. *Newtown & Bridgeport Turnpike Co.,* 3 id., 544, and *Northrop* v. *Curtiss,* 5 id., 246, subsequently sanctioned by more modern cases in our reports, as is claimed, are relied upon in support of the position. The first two of these cases, and the case of *The Oxford Turnpike Co.* v. *Bunnel,* 6 Conn., 552, do undoubtedly decide that, in actions at law, in cases where the legislature in the act of incorporation either prescribe the mode of transferring stock, or authorize the company to do it in their by-laws, and the company do in their by-laws prescribe a mode as the only one to be pursued, that mode must be followed, or the legal title will not pass by an assignment which would be good at common law had no particular and exclusive mode of transfer been prescribed. These cases, and others to the same effect, being actions at law, conversant only with what at the time was considered the strict legal title to corporate stock, have necessarily no controlling force in a case depending upon equitable instead of legal principles. And although the case of *Northrop* v. *Curtiss* was upon a bill in chancery praying that the

legal title to certain shares of stock might be transferred to the plaintiff, who claimed the equitable title thereto, yet the case itself shows that the plaintiff relied not only upon what he considered an equitable as distinguished from a legal assignment of the stock to himself, but more particularly upon the fact that the party from whom he claimed to have derived his title, such as it was, had only an equitable interest in the stock to assign, and therefore could not create in the plaintiff as his assignee any better title than he himself had in it; and it was upon this last ground that he insisted that the intervening attaching creditors took nothing, because, as he claimed, the debtor's equitable interest was not the subject of an attachment. The court was of opinion that the debtor had a valid legal title at the time his stock was attached and taken in execution, and therefore that the plaintiff's title, derived from him subsequently to the attachment, was of no validity, and on this ground dismissed the bill. It appears to us, therefore, that there is nothing in any of these cases that ought to control our determination of the present case, contrary to the strong equitable claim of the plaintiff, as shown in the facts found by the court, whatever may be thought of some of the remarks made by the judges in giving reasons for the decisions. On the contrary, the cases themselves, so far as they decide that there can be no legal transfer of stock except upon the books of the company, or by an assignment actually recorded on those books, may be regarded as authorities showing that the plaintiff has no legal title to the stock and is therefore justified in applying to a court of equity for relief.

Shares in the stock of a corporation are the subjects of sale, mortgage or pledge, and are liable to attachment and execution like other personal property. And when the question is between a vendee and an attaching creditor of the vendor, as to which of them has the better title, and it appears, as it does here, that the instrument of transfer or assignment was executed prior in point of time to the service of the attachment, then, if the vendee's purchase was made in good faith and for a valuable consideration, as to which no question is made in

Colt *v.* Ives.

this case, it would seem that in equity his title ought to prevail, provided he has done all that the law requires of him, and all that it was possible for him to do, in taking such possession as the nature of the property is susceptible of. In regard to chattels there must be a substantial change of possession accompanying and following the sale, or it will, unexplained, be conclusive evidence of a fraudulent trust, which will render the sale void as to creditors. Possession being the usual indication of ownership in personal chattels, the law looks upon the purchaser's neglect to take and hold possession of the property purchased as evidence that the sale was fictitious, and therefore, as to the vendor's creditors, treats the property as still his, notwithstanding the sale. So in respect to the assignment of ordinary choses in action, there must be notice of the assignment to the debtor—the assignment conveying but an equitable interest in the thing, and notice to a trustee being in equity the ordinary and only practicable mode in which an assignee can protect his interest. And in the case of the purchase of stock in a corporation, there must be such a transfer of it as the legislature in the charter or by statute prescribes ; and notice of the assignment of choses in action, and the transfer required by statute of corporate stock, stand in lieu of the taking and retaining of the possession of personal chattels sold, being the only possession the nature of the property admits of. These elementary principles, for which surely no authority need be cited, it is necessary to bear in mind in considering a case of this sort ; since, if a good reason is shown for not giving notice of the assignment of a chose in action, as was the case in *Bishop* v. *Holcomb,* 10 Conn., 444, or for the failure to procure a transfer of stock on the books of a corporation, as in this case, which would have been sufficient to excuse the taking possession of personal chattels sold, then upon the same principles upon which the taking possession in the latter case would be excused, it would seem that the act which is ordinarily required in order to perfect an assignment of a chose in action or of stock in a corporation ought in equity certainly to be also excused.

The application of these suggestions to the case in hand

seems quite obvious. We need not determine whether the written assignment of the stock by Mr. Jarvis passed the legal title or only an equitable title, since it is very clear that in either case it passed all the substantial interest, and left in him, if any thing, only the technical legal title.

But the respondents claim that, so long as this bare legal title remained, with no knowledge on the part of his creditors that he had made the assignment, it was open to their attachments as his to the same extent as before the assignment. We think this too broad a claim. The ground on which stock sold but not legally transferred is open to attachment by the creditors of the vendor, is, as has been suggested, the same upon which personal chattels sold but retained in the possession of the vendor are liable to attachment by the vendor's creditors. The principle in each case is, that the retention of possession is a badge of fraud—that is, is evidence of a fraudulent secret trust. This is the reason given in the recent case of *Shipman* v. *Aetna Ins. Co.*, 29 Conn., 245, why certain stock, sold by a written bill of sale but not transferred, was held to pass to the trustee in insolvency of the vendor; the trustee being held to have taken precisely as an attaching creditor would have done.

But it is well settled that this retention of possession in every case is only a *badge*, that is, is *evidence* of fraud, to be regarded as conclusive where the retention of possession is voluntary and unnecessary.

And it is to be observed that it is the policy of the law which forbids this retention of possession; and the liability of the property to attachment is in a measure a punishment, either for the actual fraud, or the negligence of the vendor. Hence it is said in the cases on this subject that " proof of the payment of a full consideration, or of the justice of the debt for which the property is taken on legal process, accompanied with the highest evidence of the honesty of the transaction, will not, in general, be sufficient to repel the legal effect of neglecting an actual removal of the property." *Mills* v. *Camp*, 14 Conn., 219. *Kirtland* v. *Snow*, 20 id., 23. The rule therefore is, to a certain extent, punitive in its character,

creating something in the nature of a forfeiture for the violation of the policy of the law. It is on this ground that the rule is relaxed where there has been no voluntary violation of this policy. If the manual delivery of the article sold, in consequence of its bulk or situation, is impossible, the delivery and taking possession are excused. So where the vendor has used due diligence to make delivery, and the vendee to take possession, the property is not open to attachment; as in the case of *Mead* v. *Smith,* 16 Conn., 346, where it was held that a purchaser in New York was to be allowed a reasonable time to come into Connecticut to take possession of the property purchased; and it is always held that a grantee is to be allowed a reasonable time to get his deed to the recording office. Now whether this principle ought to be applied in actions at law, depending upon rigid legal principles, to the case of the transfer of stock in a corporation, perhaps depends upon whether we regard the dictum in the case of *The Newtown & Bridgeport Turnpike Co.* v. *Northrop,* as correct, " that the transfer on the books of a company does not operate by giving notice of an antecedent conveyance, but is a fact essentially necessary to originate a title." But we are not called on to discuss this question at this time. It is only necessary to say therefore that the respondents admit that such is not the law generally; and it is claimed merely to be the law of Connecticut, founded upon peculiar views which have obtained here. But whether it is law or not, so far as regards the bare technical legal title, and to be adhered to in trials at law, we are satisfied that it ought not to be regarded as having the controlling force and efficacy claimed for it in equity. No such ground was taken or suggested in the case of *Shipman* v. *The Aetna Ins. Co.,* before referred to; and the late case of *The Bridgeport Bank* v. *The New York & New Haven R. R. Co.,* 30 Conn., 231, proceeded throughout upon the idea that the plaintiffs had a good equitable title to the stock claimed in that case. In analogy then to the principles which have been suggested, we think the effort of the vendor to get the assignment perfected on the transfer books of the company, and on failure to accomplish this his effort to make the assignment as

notorious as possible, constituting not only due diligence but all the diligence on his part that it was possible to exercise, ought to exempt this retention of possession from the condemnation of the law, if a retention of possession ever can be. Indeed the retention of possession was as nearly nominal as possible. Assuming then that the respondents are correct in the claim that this retention of possession involves the retention of the naked legal title also, is this circumstance sufficient to distinguish the case from those cases where the retention of possession by the vendor may be excused or justified ? In the case of the sale of personal property the mere sale is ordinarily sufficient to pass the legal title between the parties before delivery ; while here it is claimed that the formal transfer on the books of the company was necessary for that purpose. But ought this distinction to be allowed to deprive the petitioner of her property, when, if it was of any other description, she would confessedly hold it ? Is the distinction so material that the case must rest upon the mere fact that a bare legal title was retained against the desire of the vendor and his utmost effort to convey it ? This certainly is to place the case upon the most technical ground possible, and it would vest in corporations and their officers the power to prevent the transfers of their stock by the holders of it—a power which it is too much to be feared would not always be exercised with the most disinterested motives. It is true there will sometimes be cases where a mere technical title will prevail ; but it is desirable, so far as practicable, that the substantial and equitable ownership should be sustained rather than a technical title ; and so far as the rule was intended to be punitive in its application, in order to compel a conformity to the policy of the law, there is no reason why a party who has done all that he possibly could should be made to suffer any penalty. The plaintiff then, having done, or having had done for her, all that could be done, is wholly without fault. Her debt was of as high a nature as the respondents'. She had acquired a perfect equitable title to the stock, and she had taken every possible means to obtain the legal title also. An attaching creditor, while he has rights which have been too long and too definitely

settled to be disturbed or essentially modified by judicial decision, is yet by the modern policy of our law regarded with less favor than formerly, when attachments and sales on execution were the only compulsory mode of securing an appropriation of a debtor's property to the payment of his debts. It is a proceeding, moreover, by which one creditor may gain a preference over others equally deserving, and thus contravene the present policy of our insolvent laws, based upon the more equitable principle of an equal distribution. And it is at best a mode of seizing property without previous notice, which is always injurious and often ruinous to the debtor.

We do not feel, therefore, that we are under any obligation, without any substantial reason being given for it, to place the rights of an attaching creditor above those of a *bona fide* purchaser, where the utmost diligence has been used, as in this case, by both purchaser and vendor to make the sale and delivery as complete as possible. If the retention of the bare legal title to the stock, so merely formal as it was here, does not furnish a reason for holding the purchase to have been colorable and conclusively fraudulent against creditors, as we think it does not, then it seems quite clear that there can be no other which would subject this property to attachment that would not apply in all its force to any property in the hands of a trustee and subject that also to liability for the trustee's debts. For these reasons we are satisfied that Mrs. Colt is equitably entitled to the stock ; and that the attaching creditors should be enjoined against proceeding to levy their executions upon it. And so we advise the superior court.

In this opinion the other judges concurred ; except SAN-FORD, J., who did not sit.