### SCOTT and another *v.* PEQUONNOCK NATIONAL BANK OF BRIDGEPORT, CONNECTICUT.

*(Circuit Court, S. D. New York.* January 15, 1883.)

1. TRANSFER OF NATIONAL-BANK STOCK—HOW REGULATED—EFFECT OF DECISIONS OF STATE COURTS.

   The rules which regulate the transfer of the stock of national banks are to be found in the statutes of the United States. The national banking act prescribes no exclusive method of transfer, but authorizes every association to do so. The decisions of the courts of the state in which the bank may be located do not control it.

2. SAME—PRECEDENCE OVER ATTACHMENT OF VENDOR'S CREDITOR GIVEN TO UNRECORDED TRANSFERS.

   Precedence should be given to unrecorded transfers of shares of stock of a national bank, which had passed no by-law on the subject, located in a state whose courts leaned strongly against such transfers, but whose statutes gave the attaching creditor no peculiar rights, by delivery of certificates and a writ-

ten assignment with power to transfer, both executed in blank, over subsequent attachment of a creditor of the original vendor in whose name the shares still stood on the books of the bank.

3. SAME—GROUNDS.

Where no specified acts are by positive requirement made prerequisite to the vesting of a valid new title, creditors without notice take their debtor's property subject to all *bona fide* liens and equitable transfers. No registry being required, non-recording was not evidence of fraud. The tendency is to regard state certificates, attached to an executed blank assignment and power to transfer, as approximating to negotiable securities and to favor attaching creditors less than when attachment and sale on execution alone could compel payment of a claim out of debtor's property. Federal courts have so decided.

4. LEGAL RATE OF INTEREST IN NEW YORK—ACTION ON TORT FOR UNLIQUIDATED DAMAGES.

In an action of tort to recover unliquidated damages, if interest as a part of damages is to be added to the principal sum found to be due, the rate in New York is 6 per cent.

5. UNRECORDED TRANSFER OF STOCK—RIGHT OF ATTACHING CREDITOR—RULE IN CONNECTICUT AND MASSACHUSETTS.

The courts of Connecticut and Massachusetts have quite, rigidly maintained that where a statute or charter prescribes an exclusive manner of transfer of the stock of a corporation, an unrecorded transfer shall not be valid against the attaching creditors of vendor; and the courts of the former have strongly leaned towards a construction of the charters of its corporations compelling record of such transfers.

## Agreed Statement of Facts, Admission of Documents, etc.

The following is hereby agreed upon and admitted as a statement of the facts of the above-entitled case, and the said facts are hereby admitted to be true for the purposes of the trial of this action:

On the twentieth day of May, 1868, one Samuel Wilmot was the owner of 10 shares of the capital stock of the Pequonnock National Bank, the above-named defendant, a corporation created by and under the laws of the United States relating to national banking, and located and doing business as a national bank in the city of Bridgeport, state of Connecticut; the said 10 shares standing in his name on the books of the said bank, and he was the lawful holder and owner of a stock certificate of the said 10 shares duly and regularly issued therefor by the said bank, and marked Plaintiffs' Exhibit No. 2.

On or about the said twentieth day of May, 1868, the said Samuel Wilmot assigned in the usual mode the said 10 shares of capital stock to one George C. Dunbar, who carried on a banking business in the city of New York, by delivering in the said city, to the said George C. Dunbar, the said certificate and a written assignment of and a power of attorney to transfer the said 10 shares; the said written assignment and power of attorney being executed in blank and marked Plaintiffs' Exhibit No. 1.

Subsequently, on or about the first day of January, 1869, in the said city of New York, the said George C. Dunbar, in the usual course of business, assigned for full and valuable consideration the said 10 shares to William B. Scott and Albert E. Scott, composing the firm of William B. Scott & Co., who

were and still are residents of and domiciled in the state and city of New York, and carried on a general banking business in the said city, under the firm name of William B. Scott & Co., by delivering to the said William B. Scott & Co. the said certificate, written assignment, and power of attorney.

Subsequently, on the thirteenth day of August, 1869, the said William B. Scott & Co. made demand upon the said bank, at its place of business in the said city of Bridgeport, state of Connecticut, to transfer the said 10 shares from the name of the said Samuel Wilmot, in which name the said 10 shares still stood, to their own names on the books of the said bank. and to issue a new certificate therefor in their names; and at the same time the said William B. Scott & Co. presented the said written assignment and power of attorney, and the said certificate, and offered to surrender the same for the purpose of having such transfer made.

The said bank, however, upon the ground that the said 10 shares had, on the twenty-sixth day of July, 1869, been levied upon by virtue of a writ of attachment, as hereinafter mentioned, refused to issue a new certificate, or to transfer the said 10 shares, as requested.

Prior to the said thirteenth day of August, 1869, the said William B. Scott & Co. had not made any demand for transfer upon the said bank, nor given notice to the said bank of the assignment to them as aforesaid, nor of their possession of the said stock certificate, and the said 10 shares of stock still stood in the name of the said Samuel Wilmot on the books of the said bank.

On the twentieth day of July, 1869, one Ethan F. Bishop commenced an action in the superior court of the state of Connecticut, in and for the county of Fairfield, against the said Samuel Wilmot, and on the twenty-sixth day of July, 1869, the sheriff of the said county of Fairfield levied upon the said 10 shares, under and by virtue of a writ of attachment issued out of said court in said action against the property of the said Samuel Wilmot.

On the thirteenth day of August, 1869, the said Ethan F. Bishop duly recovered judgment against the said Samuel Wilmot, and within the time prescribed by law, for the purpose of perfecting the lien of an attachment, to-wit, on September 4, 1869, execution issued upon the said judgment to the said sheriff of the county of Fairfield, and on the first day of October, 1869, the said 10 shares were seized by the said sheriff under the said execution, and on the twenty-second day of October, 1869, the said 10 shares were sold at public auction, by the said sheriff, to one Robert T. Clark, to whom the said sheriff issued his certificate, and thereupon the said bank, upon the presentation of the said certificate, transferred the said 10 shares on the books of the said bank from the name of the said Samuel Wilmot to the name of the said Robert T. Clark, and delivered to him a new certificate therefor, and has since paid and continued to pay the dividends accruing on the said 10 shares to the said Robert T. Clark or his assigns, instead of the said William B. Scott & Co., the holders of the old certificate heretofore mentioned.

It is hereby further agreed and stipulated that the statutes of Connecticut, and the decisions of the supreme court of the state of Connecticut, as reported in its regular series of reports, which decisions are hereby made part of this statement, may be referred to as evidence of the law of the state of Connecticut.

It is hereby further agreed and admitted that if the court should find that the plaintiffs are entitled to recover judgment of the said defendant upon the facts of this case, the amount of damages to be awarded by the said judgment, exclusive of costs, is the sum of $1,030, the amount realized at the said auction sale of the said 10 shares, plus the lawful interest on the same from August 13, 1869, to date.

It is hereby further agreed and stipulated that the following documents may be admitted without further proof, and read at the trial of this action as evidence of the facts herein recited; namely, the exemplified copy of the judgment roll in the above-mentioned action of *Ethan F. Bishop* v. *Samuel Wilmot*, marked Defendant's Exhibit No. 1, and the above-mentioned written assignment and power of attorney and certificate of stock, marked, respectively, Plaintiffs' Exhibit, No. 1 and No. 2.

It is hereby further agreed and stipulated to waive a jury trial, and to submit to the honorable court all the issues of fact, as well as the issues of law, in this action.

*Dated New York, October* 23, 1882.

GEORGE F. CANFIELD,
Attorney for the Plaintiffs, W. P. SCOTT & Co.

L. B. BUNNELL,
Attorney for Defendant.

It is hereby further admitted that the bank has no by-laws; that the practice of the bank from its organization has been uniformly to require the transfer, or to authorize the transfer, on the transfer books of the bank, either in person or by attorney, on the surrender of the outstanding certificate.

It is hereby further stipulated that the two letters from the secretary of the state of New York, marked Plaintiffs' Exhibit No. 3, may be admitted and read as evidence of the facts therein recited.

GEORGE F. CANFIELD,
Attorney for the Plaintiffs.

L. B. BUNNELL,
Defendant's Attorney.

SHIPMAN, J. This is an action at law to recover damages from the defendant corporation for a refusal to allow a transfer upon its books to the plaintiffs of 10 shares of its stock. By written stipulation of the parties the case was tried by the court upon the hereto prefixed agreed statement of facts, and a jury was waived. Said facts are also found to be true. In the absence of a statute or of a provision in the charter, or of a by-law passed in pursuance of authority conferred by the charter, prescribing the exclusive manner in which the stock of a corporation shall be transferred, the stock-owner has a right to transfer such property to a purchaser by the delivery of the stock certificate, with a written assignment thereof. The title of a *bona fide* purchaser, to whom such certificate and assignment have

been delivered, will not be divested by the subsequent attachment of the stock at the suit of a creditor of the vendor. *Boston Music Hall* v. *Corey*, 129 Mass. 435.

In some of the states statutes have been passed, or provisions have been inserted in the charters of the corporations, prescribing, either expressly or by implication, an exclusive method of transfer. The courts of Connecticut and of Massachusetts have been quite rigid in maintaining the doctrine that when such statutes or charter provisions exist, an unrecovered transfer of stock shall not be valid as against attaching creditors of the vendor, and the courts of the former state have strongly leaned towards a construction of the charter of Connecticut corporations that shall compel a record of the assignment.

The Connecticut decisions, especially the earlier ones, which were made at a time when the rights of attaching creditors were strongly favored in that state, were to the effect that "in cases where the legislature in the act of incorporation either prescribe the mode of transferring stock, or authorize the company to do it in their by-laws, and the company do in their by-laws prescribe a mode as the only one to be pursued, that mode must be followed, or the legal title will not pass by an assignment which would be good at common law had no particular and exclusive mode of transfer been prescribed." *Colt* v. *Ives*, 31 Conn. 25. The reason of the rule is stated by the court in *Colt* v. *Ives* as follows:

"In regard to chattels there must be a substantial change of possession accompanying and following the sale, or it will, unexplained, be conclusive evidence of fraudulent trust, which will render the sale void as to creditors. * * * And in the case of the purchase of stock in a corporation, there must be such a transfer of it as the legislature in the charter or by statute prescribes; and notice of the assignment of choses in action, and the transfer required by statute of corporate stock, stand in lieu of the taking and retaining of the possession of personal chattels sold, being the only possession the nature of the property admits of."

In *Fisher* v. *Essex Bank*, 5 Gray, 373, Chief Justice Shaw, after saying that whatever common-law rules, in the absence of any express rule of law, courts have adopted to determine what act constitutes the actual transfer of shares, when the transfer is so regulated such law must govern, held that an express provision in the act of incorporation of a bank that the stock should be transferable only at its banking house and on its books, made a transfer at the bank imperative as against an attaching creditor without notice of the pre-

vious assignment and delivery of the certificates to a purchaser. Judge SHAW's reasoning was to the effect that it is necessary to fix some act and some period of time at which the property changes and vests in the vendee," and that by the charter the transfer at the bank is made "the decisive act of passing the property—the legal, transferable, attachable interest."

The defendant claims the benefit of this series of decisions in the present case, and especially insists that as the defendant corporation is located in Connecticut the decisions of the courts of that state should have a controlling effect.

The defendant having been incorporated under the national banking act, the rules which regulate the transfers of its stocks are to be found in the statutes of the United States. The twelfth section of the act of 1864 (13 St. at Large, 102) provided that the shares of the stock of a national bank shall be "transferable on the books of the association in such manner as may be prescribed in the by-laws or articles of the association." In the eighth section of the same act the directors were empowered "to define and regulate by by-laws, not inconsistent with the provisions of the act, the manner in which its stock shall be transferred." These provisions are continued, in substantially the same terms, in sections 5139 and 5136 of the Revised Statutes. The construction of the statute, and the question of title as between the assignee and the attaching creditor, are not controlled by the tenor of the decisions of any one state.

The construction which has been more generally placed upon those provisions in charters which require that the transfer shall be made only upon the books of the corporation, or upon provisions of a similar character, is that this regulation is designed for the security of the bank and of *bona fide* purchasers who take transfers of the stock and possession of the certificates, without notice of any prior equitable transfer; and that, as between the parties to the sale, a transfer not in conformity to such provisions passes the equitable, though not the legal, title, and vests the right to the shares in the purchaser. *Black* v. *Zacharie*, 3 How. 483; *U. S.* v. *Cutts*, 1 Sumn. 133; *N. Y. & N. H. R. Co.* v. *Schuyler*, 34 N. Y. 80; *McNeil* v. *Tenth Nat. Bank*, 46 N. Y. 325. The New York decisions are to the effect that such a transfer conveys the legal title.

In *Johnston* v. *Laflin*, 103 U. S. 800, a case involving the transfer of shares in a national banking association, which, like the defendant, had made no by-laws on the subject of transfers of its stock, the court say:

"Shares in the capital stock of associations, under the national banking law, are salable and transferable at the will of the owner. They are, in these respects, like other personal property. The statute recognizes this transferability, although it authorizes every association to prescribe the manner of their transfer. * * * It is not necessary, however, to consider what restrictions would be within its (the bank's) power, for it had imposed none. As between Laflin and the broker, the transaction was consummated when the certificate was delivered to the latter, with the blank power of attorney indorsed, and the money was received from him. As between them, the title to the shares then passed. Whether there be deemed a legal or equitable one, matters not; the right to the shares then vested in the purchaser. The entry of the transaction on the books of the bank, where stock is sold, is required, not for the translation of the title, but for the protection of the parties and others dealing with the bank, and to enable it to know who are its stockholders, entitled to vote at their meetings and receive dividends when declared. It is necessary to protect the seller against subsequent liability as a stockholder, and perhaps also to protect the purchaser against proceedings of the seller's creditors."

From this recent decision of the United States supreme court it appears that no exclusive method of transfer of stock in a national banking association is imposed by the provisions of the national banking act in regard to transfers, when no by-laws on the subject have been passed by the bank whose stock is in controversy, and that an unrecorded transfer is good as between the parties, and that the question of the rights of an attaching creditor to stock transferred by an unrecorded assignment, was regarded by the learned judge who wrote the opinion as one not definitely settled.

In holding that the unrecorded transfer has preference over the attachment, I am influenced by the following considerations:

*First.* In the absence of positive provisions of law or rules of evidence, either statutory or by decisions of courts, whereby transfers of property, made without notice to the public or without registry, are declared fraudulent or void as against attaching creditors without notice, or whereby certain specified acts are made prerequisite to the vesting of a new title, creditors take their debtor's property subject to all honest and *bona fide* liens and equitable transfers. *Boston Music Hall* v. *Cory,* 129 Mass. 435; *Continental Nat. Bank* v. *Eliot Nat. Bank,* 7 FED. REP. 369. In this case there is no statutory provision, and no by-laws, which require that a transfer of the stock must be recorded, and, in the absence of such provision, the non-recording of the transfers is not evidential of fraud, as is the case when the vendor retains possession of chattels after a sale. The delivery of

the certificate and the assignment and the power to transfer is a sufficient delivery at common law.

The statutes of Connecticut, in regard to the attachment of stock and the levy of executions thereon, do not give to attaching creditors any peculiar right in stock which has been transferred by the unrecorded transfer. The extent of the rights which the attaching creditor would have in such stock of a Connecticut corporation is to be determined by other statutes than those which relate to attachment and levy of execution. *Boston Music Hall* v. *Cory*, 129 Mass. 435.

*Second.* The tendency of modern decisions is to regard certificates of stock attached to an executed blank assignment, and power to transfer, as approximating to negotiable securities, though neither in form or character negotiable. *Bank* v. *Lanier*, 11 Wall. 369; *Railroad Co.* v. *Bank Bridgeport*, 30 Conn. 270.

*Third.* The courts of these states, which have most strongly upheld the superior rights of attaching creditors of the vendor as against the unsecured equities of purchasers, regard the attaching creditor with less favor than formerly, "when attachments and sales on execution were the only compulsory mode of securing an appropriation of a debtor's property to the payment of his debts." *Colt* v. *Ives*, 31 Conn. 25.

*Fourth.* Decisions of high authority in the federal courts have given unrecorded transfers of stock for value precedence over subsequent attachments in behalf of creditors of the vendor, or over the claims of creditors. *U. S.* v. *Cutts*, 1 Sumn. 133, approving *U. S.* v. *Vaughan*, 3 Bin. 394; *Continental Nat. Bank* v. *Eliot Nat. Bank*, by Judge LOWELL, 7 FED. REP. 369.

In the agreed statement of facts it is agreed that, if the plaintiffs are entitled to judgment, the amount of damages is the sum of $1,030, plus the lawful interest on the same from August 13, 1869, to October 23, 1882. In an action of tort to recover unliquidated damages, if interest as a part of the damages is to be added to the principal sum found to be due, the rate of interest is now, in this state, 6 per cent. *Salter* v. *Railroad Co.* 86 N. Y. 401.

Let judgment be entered for the plaintiffs in the sum of $1,845.41, and costs of suit.