## LOUISE B. GRAY *vs.* JAMES R. GRAHAM.

First Judicial District, Hartford, October Term, 1913.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

There is no rule of law or public policy which forbids the owner of shares of corporate stock from transferring the bare legal title to another and retaining the beneficial and equitable interest himself; and therefore an attaching creditor of the legal title-holder cannot successfully assail the position of the real and beneficial owner, and appropriate the stock to the payment of his claim, unless it appears that he extended credit to the legal holder in reliance upon the latter's apparent ownership of the stock, in which event the beneficial owner would be estopped from asserting his claim.

In the present case the plaintiff, a woman, transferred, without any consideration therefor, one of a number of shares owned by her to her son-in-law, solely to enable him to qualify as a director of the company, and with no intent on the part of either of them to effect a sale or gift of the stock, the certificate of which she took and retained. Thereafter the son-in-law purchased merchandise on credit which was extended to him without any knowledge, upon the part of the creditor, of his apparent ownership until the creditor discovered that fact just before attaching the stock. Upon a suit brought by the real owner to prevent a sale of this stock on an execution against the son-in-law, it was *held:*—

1. That upon the facts found the plaintiff was not estopped from asserting her right to the stock, since the creditor had not relied upon the son-in-law's legal title in dealing with him, nor had he been prejudiced in any way by the transfer.

2. That the statute prescribing that directors should be stockholders

(Public Acts of 1903, Chap. 194, § 10) had reference to a real, bona fide owner of stock as distinguished from one who held a mere nominal title; and therefore the transfer in question did not qualify the son-in-law to become a director.

3. That while such transfer for such purpose constituted a wrong to the corporation and the public, it did not affect the question of the beneficial ownership of the stock transferred, which was an independent matter.

The rule that voluntary and unnecessary retention of possession of personal property by a vendor is a badge of fraud, relates only to tangible property whose ownership is indicated by physical possession, and does not apply to corporate stock.

The registration of stock on the books of a corporation is not a physical transfer; the general public have no knowledge of it, and public policy does not require a presumption of fraud from the continuance of the title on the books in one person when the beneficial title is elsewhere.

Argued October 7th, 1913—decided January 15th, 1914.

SUIT to restrain the defendant, a constable, from selling on execution a share of corporate stock which the plaintiff claimed to own, though standing of record in the name of one to whom the plaintiff had transferred it in order to qualify him to become a director, brought to and tried by the Superior Court in Hartford County, *Holcomb, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *Error and new trial ordered.*

*Herbert Knox Smith,* with whom was *Ernest Walker Smith,* for the appellant (plaintiff).

*Stewart N. Dunning,* for the appellee (defendant).

WHEELER, J. On October 27th, 1903, the plaintiff owned two hundred and ten shares (being one fifth) of the capital stock of the Gray Telephone Pay Station Company, a Connecticut corporation located in Hartford, and transferred to her son-in-law, Caswell, without consideration, one of these shares in order to qualify

him so that he might be elected a director and represent her interest in the management of the company. Neither the plaintiff nor Caswell intended the transfer as a sale or gift, but solely to qualify him as a director. No agreement in words was made by Caswell relating to this purpose nor for a re-transfer; neither did he make a pledge of it, nor execute a power of attorney or assignment of the share to the plaintiff. Nothing appeared on the books of the company to indicate that any one except Caswell had any interest in this share, and no claim was ever made to the company that the plaintiff claimed to have any interest therein. The company, on October 27th, mailed to the plaintiff the certificate for one share, and she has since had the possession of it, and Caswell never has had the possession of it and never saw it until the trial. The share was then worth over $600, and since that date quarterly dividends of ten per cent. have been declared thereon which Caswell, with the knowledge of the plaintiff, has received and used. Caswell was elected a director in November, 1903, and has continued as such and voted this share ever since.

This share stood, unincumbered, in the name of Caswell, on the books of the company up to the time it was attached by the defendant constable in an action by the Firestone Tire and Rubber Company against Caswell, in which action judgment was rendered against Caswell, and execution thereon levied by the defendant, and two days before the sale thereunder the injunction in this action issued. The Firestone Company did not know at the time it gave credit to Caswell that this share stood in his name, and it did not give credit to him upon the faith of his ownership, nor had that company, nor the defendant constable, knowledge that the plaintiff had or claimed any interest in this share until the injunction to restrain the sale on execu-

tion of the stock and to obtain its release from the attachment.

The question at issue is: Has the plaintiff, Mrs. Gray, or the creditor, the Firestone Company, represented by the defendant constable, the superior right to the share of stock? So long as this share of stock stood in the name of Caswell on the books of the company, the legal title to it was in him. Although no legal transfer could be made of the stock except when made upon the books of the company in a prescribed manner, that did not prevent a transfer by him of the beneficial interest to Mrs. Gray, good between the parties, though passing no legal title. The certificate was never delivered to Caswell; he had merely the barest legal title. The parties never intended him to have a beneficial interest in this share. In the eye of the law he held the legal title as trustee for her. When a trust arises, either through the agreement of the parties or the circumstances of the transaction, the equitable rights of such beneficial owner will be protected in equity.

Our earlier cases seem to hold, as the defendant contends, that the right of an attaching creditor of the legal title on the books of the company is superior to that of the beneficial owner of the stock untransferred upon the books of the company. These decisions have been limited and explained as being actions at law conversant with the strict legal title, and having "no controlling force in a case depending upon equitable instead of legal principles." *Colt* v. *Ives,* 31 Conn. 25; *Reed* v. *Copeland,* 50 Conn. 472.

In *Colt* v. *Ives, supra,* Jarvis, a trustee, requested the railroad company to transfer shares of stock standing in his name on its books to Mrs. Colt to reimburse her for funds used by him and belonging to a trust fund for her benefit. Upon its refusal, owing to an attachment, he left with the company the certificate with an assign-

ment of it to Mrs. Colt. This attachment was subsequently released and later on another one was made. We held Mrs. Colt's equitable interest superior to the second attachment made after the notice to the company through the certificate filed. In *Reed* v. *Copeland,* 50 Conn. 472, a certificate of stock was delivered to one in part payment of a contract for services, without an assignment of the certificate or a transfer on the books. We held the vendor held the legal title in trust for the vendee, and that the equitable title in the vendee was good between the parties. In *Mowry* v. *Hawkins,* 57 Conn. 453, 18 Atl. 784, Mowry purchased stock with trust funds. By mistake the company issued the certificate to him individually instead of as trustee. We held the equitable interest of the *cestui que trust,* his wife, superior to an attachment levied upon the stock by a creditor of Mowry. Other instances where an equitable title has been recognized and protected by us against a technical legal title are *Skiff* v. *Stoddard,* 63 Conn. 198, 26 Atl. 874, 28 id. 104; *Waterman* v. *Buckingham,* 79 Conn. 286, 64 Atl. 212.

We do not deem it necessary to consider or refer to the many other cases to be found in our reports upon this subject. It is sufficient to say that since *Colt* v. *Ives,* 31 Conn. 25, we have broadly adhered to the equitable principle it announced. In the absence of statutory prohibition, the equitable title will be supported ahead of the holder of the legal title, unless the beneficial owner is estopped from pressing his ownership against a creditor who has been injured by reliance upon the possession of the legal title, or unless a general rule of law based on public policy forbids. The Firestone Company did not extend credit to Caswell on the faith of his ownership of this share of stock, and was not injured as a consequence. Without these elements there is no foundation for a claim of equitable

estoppel. *Chase's Appeal*, 57 Conn. 236, 18 Atl. 96. The defendant, wisely, does not seriously press this claim.

Aside from his reliance upon our earlier decisions, he relies mainly upon three claims: 1. That stock is personal property, retention of the possession of which, when voluntary and unnecessary, is a conclusive badge of fraud. 2. That permitting title to stand in the name of Caswell, in order to qualify him as a director, violated the statute (Public Acts of 1903, Chap. 194, § 10) requiring directors to be bona fide holders of stock, and hence was a fraud on the corporation and against public policy. 3. That Mrs. Gray does not come into court with clean hands, since she is asking the court to help her to violate this statute.

The rule regarding the retention of possession by a vendor relates to tangible personal property whose ownership is indicated by physical possession, and not to stock. The registration of stock on the books is not a physical transfer. The public have no knowledge of this, although under certain conditions stockholders and creditors may have. Public Acts of 1903, Chap. 194, §§ 18, 39. The only feature of a stock transfer which resembles a physical possession is the certificate of stock, and Mrs. Gray always had this in her possession. Public policy may have required the presumption of fraud to arise from the mere physical possession of chattels; it does not require such a presumption from the mere continuance of the title to stock on the books of the company when the beneficial title is elsewhere.

The Corporation Act (Public Acts of 1903, Chap. 194, § 10) provides that "directors shall be stockholders, except as hereinafter provided." We think the statute intends an actual and not a nominal ownership, a beneficial and not a mere technical legal title. Caswell had

no right to serve as a director; he was not the bona fide owner of any stock. The violation of the statute was a wrong to the corporation and to the public; it was one to be directly redressed by them. Though Mrs. Gray's conduct in giving Caswell the legal title to this share of stock has wronged the corporation and the public, that does not affect the beneficial ownership of the stock. Her conduct could have no relation to her ownership, unless positive law or public policy forbids one person holding the beneficial ownership while another holds the legal title. The use made of the title and the consequences flowing from the use, are considerations quite apart from the question of ownership. We know of no law or public policy which forbids one holding the legal, and another holding the equitable, title to stock.

Nor can we hold that Mrs. Gray's conduct has deprived her of the right to enforce her ownership in a court of equity. She has done no wrong to any creditor of Caswell. No one interested in the question of ownership between her and Caswell has or will suffer by her course. She has helped violate a statute; her wrong is to the public and to the corporation. In enforcing her right to the stock, she is not relying upon her wrongful course in aiding Caswell to be a director. She is relying upon the proven facts which show her beneficial ownership, an ownership which has defrauded no one and in reliance upon which no one has been wronged. Mrs. Gray does, the creditor does not, occupy the position of a bona fide purchaser for value. If the attachment fails, the creditor is in the same position he was in when he gave the credit; if the attachment stands, he deprives Mrs. Gray of her beneficial ownership. Since no wrong has been done to the Firestone Company creditor, it "ought not to be allowed to levy upon shares after the real, substantial, and equitable ownership has been

transferred to a purchaser for value." Morawetz on Private Corporations (2d Ed.) § 196.

There is error, the judgment is reversed and a new trial ordered.

In this opinion the other judges concurred.