MARY E. REED vs. MELVIN B. COPELAND AND ANOTHER, EXECUTORS.

The plaintiff was a niece of T., who was a widower seventy years of age, and without children, and with a large estate, and had at his request and on his promise to compensate her amply, gone to live with and take care of him. After she had lived with him five years he spoke of intending to make his will and give her a bequest, which he explained, and asked her if she would be satisfied with it. She replied that she would. He soon after informed her that he had made the will. He did in fact make the will, which was the one left by him at his death five years

Reed *v.* Copeland.

later, and a part of the bequest to her was ten shares of the stock of the Ætna Life Insurance Company, which was all that he owned. At the time he spoke to her about the bequest, he said that he should do more for her from time to time. About a year later he handed her the certificate for the ten shares, saying "I give this to you." She took it and put it in a drawer with her valuable papers. A few months later, the insurance company having issued to him as the owner of the ten shares, forty shares of new stock created out of its surplus, he delivered the certificate to the plaintiff, saying to her, "This insurance stock of yours is good stock; they give forty shares for ten; it is only a change of form, that is all; I paid nothing for it." She took the certificate and placed it with the other. The court found that he intended to vest in her the ownership of the forty shares as well as of the original ten, and that both parties supposed them to have become her property. She continued to serve him faithfully, till his death at the age of eighty-one. Held, that an equitable title to both the ten shares and the forty vested in the plaintiff.

And held that the transaction was not to be regarded as a testamentary gift, and so needing to be in writing, as T's promise "to do more for her from time to time, showed that what more he intended to do was to be done in his life-time.

Also that the transaction was not invalid under the statute of frauds, because not in writing. The delivery of the certificates was a symbolical delivery of the stock, whereby the contract became executed.

And the case resting on equitable ground, a court of equity would not allow the plaintiff to be wronged by the interposition of the statute against her.

And held not to affect the case that the charter and by-laws of the insurance company provide that transfers of stock shall be made only at the office of the company, by the shareholder or his attorney, on surrender of the certificate. This provision relates only to the legal title to the stock.

In an equitable assignment the assignor, retaining the legal title, becomes a trustee for the assignee.

And held not to affect the case that the will gave the plaintiff a legacy, which included the ten original shares of stock, and which was to be in lieu of all claims on the testator's estate, and that she had accepted the legacy. The stock was given her by the testator before his death, and therefore at his death constituted no part of his estate, and her right to the forty shares constituted therefore no claim on his estate. She was simply taking what was already her own.

An equitable remedy that existed against a party in his life-time, exists equally against his legal representatives after his death.

SUIT to compel the transfer of stock; brought to the Superior Court in Middlesex county. The following facts were found by the court:—

About the 8th of December, 1871, the plaintiff entered the family of Charles C. Tyler, the deceased, under the fol-

lowing circumstances : Mr. Tyler's wife had been taken ill a short time before, and died on the 10th of that month. She was a sister of the plaintiff's mother. The plaintiff came in answer to a telegraphic dispatch from Mr. Tyler. At that time she was living with her parents at Jacksonville, in the state of Illinois, but was temporarily absent, attending school at Oswego, in the state of New York. She was about eighteen years of age. Mr. Tyler had no children nor any relatives living in Middletown, the place of his life-long residence, nor near there.

Very soon after the death of his wife Mr. Tyler proposed to the plaintiff, and earnestly requested, that she should live with him during his life, and superintend his household affairs, and minister to his wants in sickness and in health. She replied that she could not promise to do so at that time, not knowing that her parents would give their consent.

A few days after this the plaintiff's mother came there, when, in the presence of the plaintiff, Mr. Tyler said to her that he wished she would give her consent to the plaintiff's remaining with him during his life and taking charge of his household affairs. At first the mother objected, saying it was asking a great deal ; that the plaintiff was young and would have to leave her school and give up the best part of her life. Mr. Tyler was very persistent, and to induce the plaintiff and her mother to assent to his proposition, he promised that he would amply compensate her for her services, and make such provision for her that she should never want for anything during her life, and treat her as if she were his own daughter. Relying upon this promise, the plaintiff complied with his request, the mother having given her consent.

From this time the plaintiff continued in the family of Mr. Tyler, taking charge of it and ministering to his wants in sickness and in health, up to a few days prior to his making his will in February, 1877.

Up to this time there had been no definite agreement between the plaintiff and Mr. Tyler, as to the manner in which she should be provided for, or the amount of compensation she should receive.

He then informed her that he was about to make his will, and was going to provide for her therein as he had agreed, and asked her if she would be satisfied with the following provisions: The homestead and all the personal property therein, except the piano-forte; ten shares of the stock of the National Bank of Portland, and ten shares of the stock of the Ætna Life Insurance Company, which last stock he said was worth over $5,000. This he represented would be sufficient to enable her to live upon and take care of the place, and inquired of her if she would be satisfied with those provisions, saying at the same time that he should do more for her from time to time. The plaintiff replied that she would.

After this, and on the same day, he informed her that he had made his will and had done just as he said he would, requesting her to say nothing to any one about it excepting to her parents, who, he said, had a right to know; with which request she complied. At this time Mr. Tyler had but ten shares of the Ætna Life Insurance stock.

The will was in fact made by him at that time. The bequest in it to the plaintiff was as follows:—

"I do give, devise and bequeath to my niece, Mary E. Reed, of Middletown, and her heirs forever, my dwelling house where I now dwell and reside in said city of Middletown, on the north side of Washington street, together with the land attached and belonging to the same, and all the buildings situated thereon; also all of my household furniture of every description which shall be in and about my said dwelling house at the time of my decease, and all articles of personal property of every name and description in said dwelling house, except the piano-forte, and all and each of the garden tools and implements on said premises; to have and to hold the same, and the same to be to said Mary E. Reed and her heirs forever, in fee simple, for her and their own sole use and benefit.

"I do also further give and bequeath to my said niece, Mary E. Reed, and her heirs forever, ten shares of the capital stock of the Portland National Bank, located in the

town of Portland in this state; also ten shares of the capital stock of the Ætna Life Insurance Company, located in the city of Hartford in this state: to have and to hold the same, the same to be to the said Mary E. Reed and her heirs forever, for her and their own sole use and benefit. The above devise and legacies are in lieu of all claims upon my estate."

The will gave other legacies to the amount of fifteen thousand dollars, and the residue of the estate to the three brothers of the testator and their heirs. It was drawn by the testator himself, who was a lawyer. He possessed a large estate, and the property here in question is not needed for the payment of debts or legacies. The will was dated February 22d, 1877, and had not been changed at the time of his death.

Mr. Tyler had a safe in his house with only one drawer in it, and that was not kept locked. The key to the safe was kept in a place to which both he and the plaintiff had access. The plaintiff kept all her valuables in the drawer of this safe, and he also kept his valuables therein, including the certificate for the insurance stock.

About a year after the execution of the will Mr. Tyler requested the plaintiff to go to the safe and bring him the drawer containing the certificate of insurance stock. The plaintiff did as requested. Thereupon he took from the drawer the certificate for ten shares of Ætna insurance stock, and handing it to the plaintiff said:—"I give this to you." The plaintiff tried to thank him for it, which he would not permit, saying: "Oh, pshaw! show your thanks by doing for me."

The plaintiff took the certificate and read the contents, and then put it in the drawer of the safe, where it remained until the death of Mr. Tyler.

On the 19th of November, 1878, the Ætna Life Insurance Company issued for each share of their stock then outstanding, four additional shares, and sent to Mr. Tyler a certificate of forty new shares. After receiving it he delivered it into the hands of the plaintiff, remarking at

the same time : " This Ætna Life Insurance stock of yours is good stock; it is all right; they give forty shares for ten; it is all the same, all the same as the ten shares ; it is only a change in form, and that is all; they have watered the stock; I paid nothing for it." She received it and deposited with the other certificate in the safe.

At all times during Mr. Tyler's sickness the plaintiff had the entire control of the key to the safe with his knowledge. Some time before his death he said to her that in case anything should happen to him he desired her to take the key of the safe to S. L. Warner, attorney, who would see that everything right was done to the plaintiff and as it should be. The plaintiff retained the key until after his death, when, in compliance with his request, she handed it to Mr. Warner.

I find that Mr. Tyler intended to vest in the plaintiff the ownership of the said ten shares and of the said forty shares of Ætna Life Insurance stock, and that both he and the plaintiff understood, and from and after that time supposed, that she was the owner thereof, and the plaintiff received and retained possession of the certificates. Both parties supposed the said certificates of stock were in the plaintiff's possession while in the drawer of the safe ; and I find that they were in fact.

The plaintiff was ignorant of the details of business and did not know that any steps were necessary to be taken to vest the legal title to the stock in her.

The dividends of the stock represented by the certificates were sent to and received by Mr. Tyler until his death, but upon what arrangement between the plaintiff and him (if any) or whether she knew of his having received them, did not appear.

Whenever Mr. Tyler referred to the insurance stock, after having delivered the certificates to the plaintiff, (as he sometimes did), he spoke of it as being her property.

The plaintiff remained with Mr. Tyler and performed her duties faithfully until his death in February, 1882. He was in the eighty-first year of his age at the time of his death.

He was possessed of a large estate at his decease, which is solvent, and the property in controversy is not needed for the payment of debts or legacies.

The services were not rendered in expectation of reward merely, but on account of the promise and agreement above stated.

The delivering of the certificates of insurance stock to the plaintiff by Mr. Tyler as aforesaid, was not understood nor intended by him simply as a gift, but in recognition and part fulfillment of a moral and legal obligation which he felt he was under to the plaintiff.

The legal title to the insurance stock was not transferred to the plaintiff on the books of the insurance company, and is transferable, according to the provisions of the certificates, and according to the charter and by-laws of the company, only at the office of the company, by the shareholder or his attorney, on the surrender of the certificate.

Mr. Tyler attended to his private affairs up to about the time of his last sickness. He was lame and infirm the last years of his life, and it was difficult for him to get about. He took no new business connected with his profession after the death of his wife. He died suddenly, being taken ill Sunday morning and dying about three o'clock the day following.

The value of the Ætna Life Insurance stock at the time of his death, was $175 per share.

In addition to the devise and legacies given the plaintiff by will, Mr. Tyler, a short time before his death, gave her ten shares of the Chicago, Burlington & Quincy Railroad stock, valued at $128 per share; also a one thousand dollar bond of that road, valued at $1,000; aggregating $2,280. The bond is a four per cent. bond, and the stock pays eight per cent. The insurance stock pays ten per cent. The Portland Bank stock pays eight per cent. The whole annual income of the plaintiff from what was given her by the will, and the railroad stock and bond, is $300. Taxes on the real estate given by the will are $310.50. Taxes in Middletown are twenty-three mills on the dollar. Annual expenses

for repairs and insurance on the buildings may be estimated at $108.

The value of the devise to the plaintiff is $12,000, although Mr. Tyler estimated it at $25,000. The household furniture is worth $400. The Portland Bank stock is worth $118 per share. While the plaintiff lived with Mr. Tyler he furnished her with board, clothes and what pocket money she had, the whole value of her clothes and pocket money not exceeding $100 a year.

All the facts relative to the circumstances under which the plaintiff went into the family of Mr. Tyler; what was said by him and the plaintiff and her mother; what he said, as an inducement to the plaintiff to comply with his request and to the mother to give her consent, as to compensation and being amply rewarded and provided for; what was said to the plaintiff about making his will and having made it; and what was said and done about the Ætna Life Insurance stock—are found from evidence which was objected to by the defendants on the following grounds: 1st. As being within the statute of frauds. 2d. As an attempt to control the will by parol testimony. 3d. That the gift was in the nature of a testamentary disposition of property, which by statute must be in writing. 4th. That the plaintiff, having accepted the provisions of the will, is estopped. All said evidence was received, subject to these objections.

On these facts the case was reserved for the advice of this court.

*S. L. Warner*, with whom was *H. Warner*, for the plaintiff.

1. The plaintiff is entitled to the relief sought on the ground of a contract of Mr. Tyler to make a will vesting this stock in her. On this point the case finds the agreement to give the plaintiff his Ætna Life Insurance stock. That stock then was represented by a certificate of ten shares. Its value was in excess of $5,000. Its income was fifteen per cent. This specific thing, of this value and income, was the subject of the contract. Had the legislature

reduced it to five shares the identity of the stock would have been the same. Authorizing its increase, so as to give fifty for ten shares, cannot impair the plaintiff's right to the interest in the corporation which the ten shares represented, and which she contracted for. The *contract* is the instrument which governs the rights of the parties, and the will is the means of its performance. The time at which the rights of the parties are to be determined is controlled by the contract alone. It is the minds of the parties which control and not the sole will or caprice of the testator as shown in the will. The contract was for a will vesting this specific property. If the will fails to vest the title by any mistake, oversight or neglect, a court of equity will hold the party in whom the law vests the legal title as trustee for the benefit of the party not in default. *Loffus* v. *Maw*, 8 Jur., N. S., 607 ; *Stephens* v. *Reynolds*, 6 N. York, 458 ; *Parsell* v. *Stryker*, 41 id., 480 ; *Johnson* v. *Hubble*, 5 Am. Law Reg., 177. In *Podmore* v. *Gunning*, 7 Simons, 644, the question of agreements respecting devises and bequests of estates is well considered. There the point was made that they did not bind the specific estate, but the court held that they bind both real and personal estate. In all these cases equity holds the thing contracted to be done as done, and decrees accordingly.

2. Considering the gift as a gift *inter vivos*, the plaintiff is entitled to the relief sought. The declaration accompanying the delivery of the possession of the certificate is sufficient to create a gift. The mutual consent and concurrent will of both parties essential to a gift, are here found. Not only this ; actual possession of the certificates of stock until the decease of Mr. Tyler was maintained by the plaintiff, and during all this time the deceased considered the plaintiff as the owner of the stock. Here was a transfer of an equitable title to the stock to the donee with the avowed and manifest design that thereafter the donee should hold it as her own property, and the gift became irrevocable. 3 Wait's Actions & Defences, 489. It is no answer to say that the gift was voluntary and that equity therefore will

not enforce it. On the execution of the gift the deceased is shown as having expected a benefit for it; this he has received. And the court finds that it was induced by a desire to discharge a moral and legal obligation. Further, the relationship which the contract created was to be that of parent and child, the plaintiff to be treated "as the daughter" of the deceased. Gifts supported by either one of these elements are not treated as voluntary, but are sustained in equity. *Kekewich* v. *Manning*, 1 DeG. McN. & G., 176; *Colyear* v. *Countess of Mulgrave*, 2 Keen, 87; *Bunn* v. *Winthrop*, 1 Johns. Ch., 329; *Minturn* v. *Seymour*, 4 id., 498. But were the transaction purely voluntary, whatever the law may be elsewhere, in this court it is held, in accordance with the more modern authorities, that choses in action not negotiable, and negotiable paper not endorsed, may be the subject of a gift without a complete transfer of the legal title, in such manner as to vest the equitable title in the donee, entitling him to the protection of a court of equity. *Camp's Appeal from Probate*, 36 Conn., 88; *Minor* v. *Rogers*, 40 id.; 512; 3 Wait's Actions & Defences, 491.

3. The court will support the gift as a gift *mortis causâ*. On the defendants' claim no other legal results can follow. The stock certificates had been placed in the plaintiff's hands as a gift. This act and intention are found. She had received it as such, both parties supposing the equitable title had passed to the plaintiff. She had held possession of the property many months prior to his death. It was kept in the safe, which, by the will, had been given to the plaintiff. In connection with these facts the defendants contend that the deceased had the power of revocation of the gift. Admit it, yet the gift was never revoked, and her possession continued down to the last act of the deceased touching the stock, and on to his death. The case finds that some time before his death the testator said to the plaintiff, "that in case anything should happen to him, he desired her to take the key of the safe to Mr. Warner, his attorney, who would see that everything right was done to the plaintiff, and as it should be." He was aged and infirm, and was contemplat-

ing a fatal termination of his maladies when he used the expression, "if anything happens to me." He meant his approaching death, and it was so understood. The delivery of the key, under these circumstances, was a symbolical delivery of the stock, and made a good gift *causâ mortis.* Such a delivery is a good one in such cases. Redfield (on Wills, vol. 2, p. 304, note 25,) says: "There is now no question but that the delivery of a key of a warehouse is a sufficient delivery of the goods therein." * * "The form of the transmitting possession is not essential. The question is, has the testator parted with the dominion of his property or not?"

4. The transaction vested the equitable title to the stock in the plaintiff, and the executors become trustees of its legal title in equity for her. Such would be the case upon our claims touching the contract to make a will and vest the title in her, and also in the other possible aspects of the case if treated as a gift. But the finding presents the plaintiff's rights in a still stronger aspect. Between the plaintiff and the deceased the relation of contracting parties existed. Services for a lifetime were to be rendered, and have been received. "Ample compensation" was to be paid. In recognition of the moral and legal obligations of that contract the deceased delivered this stock into the possession of the plaintiff with the intention to pass the ownership to her, and she received it. Both supposed that she was the owner. This was done in part fulfilment of a contract. Can any doubt arise as to the plaintiff's obtaining an equitable title to the stock on these facts? A contract for the sale of stock becomes executed by a delivery to the purchaser of the certificate. Such delivery is held analagous to the delivery of chattels, and as rendering the transfer complete. Ang. & A. on Corp., § 564; *Howe* v. *Starkweather,* 17 Mass., 244; *Sargent* v. *Franklin Ins. Co.,* 8 Pick., 98; *Wilson* v. *Little,* 2 Comst., 443; *Colt* v. *Ives,* 31 Conn., 25. No words are necessary to create a trust. "In English jurisprudence a trust is an equitable right, title or interest in property, real or personal, distinct from the legal ownership thereof." 2

Story Eq. Jur., § 964. Every assignment of a chose in action is a declaration of trust. Id., § 1040. The rule is stated by HINMAN, C. J., in *Brown* v. *Brown*, 18 Conn., 415. He there says " the question is not what the donor can be compelled to do; but what the donee can call upon the representatives of the donor to do. In other words, whether the executor, in case of a gift of personal property, and the heir in case of a gift affecting the realty, is not by virtue of a trust arising by operation of law a trustee for the donee." Redfield lays down the rule that equitable remedies against executors and administrators exist to the same extent as they did against the decedent. 2 Redf. on Wills, ch. 10, sec. 40.

5. As to the objections to the evidence noted in the finding. Neither of them is valid.—1st. The statute of frauds is never a bar to a case presenting equitable grounds of relief, particularly for specific performance, or the protection of a trust established.—2d. The claimed delivery of the stock was prior to the time when the will became operative. And if not, our claim that the will was made in the execution of a contract makes it subordinate to the contract. In any event the construction of the will was not in question under any issue of the case.—3d. The gift (if the court construes it to be such) was in no sense testamentary.—4th. The case does not find that the plaintiff had " accepted the provisions of the will," but, on the contrary, the whole case is predicated upon the ground that the plaintiff bases her right on her contract and the claimed gift. But if she had accepted the provisions of the will, on what ground would she be estopped? Surely this will could not divest her of her rights under the contract. And the devises in the will are " in lieu of *all claims upon his estate*." The legal title to this stock is no part of the estate of the deceased. It gives no beneficial interest. The taking of it does not diminish the estate. The legal title to the stock vests in the executors only to prevent a lapse of the title and to aid in the administration of justice. Suppose Mr. Tyler had been in a proper instrument created trustee for the plaintiff of fifty

*other* shares of this stock, would acceptance of the provisions of the will bar her claim to such property? Clearly not.

*G. A. Fay,* for the defendants.

1. A will speaks from the death of the testator, and not from its date. 1 Wms. Exrs., 221; 2 id., 1439; 1 Redf. on Wills., 379; 2 id., 583.

2. The bequest of "ten shares of the capital stock of the Ætna Life Insurance Company," is a general and not a specific legacy, and the stock dividend afterwards declared did not pass as accessory to the ten shares. 2 Redf. on Wills, 466, 473; 2 Wms. Exrs., 1439; *Gilliat* v. *Gilliat,* 28 Beav., 481; *Tifft* v. *Porter,* 8 N. York, 516.

3. The object of this proceeding is to control the provisions of Mr. Tyler's will. The plaintiff claims "a correction of the mistake in the will." As this is not a case of latent ambiguity, parol evidence is not admissible. 1 Redf. on Wills, 539; 2 id., 493, 745; 1 Jarman on Wills, 408, 417; 2 Wms. Exrs., 1199, note; *Avery* v. *Chappel,* 6 Conn., 270, 274; *Barrett* v. *Wright,* 13 Pick., 45; *Hei* v. *Heller,* 53 Wis., 415.

4. Viewed as a gift, the transaction cannot be supported, for a gift of a chattel must take effect at once and delivery is absolutely essential. 1 Parsons on Cont., 234; 2 Kent Com., 439; *Brown* v. *Brown,* 18 Conn., 416; *Shurtleff* v. *Frances,* 118 Mass., 155; *Cummings* v. *Bramhall,* 120 id., 552; *Noble* v. *Smith,* 2 Johns., 52; *Curry* v. *Powers,* 70 N. York, 212; *Trow* v. *Shannon,* 78 id., 446; *Young* v. *Young,* 80 id. 422; *Trough's Estate,* 75 Penn. St., 115; *Zimmerman* v. *Streeper,* id., 147; *Bond* v. *Bunting,* 78 id., 210; *Olney* v. *Howe,* 89 Ill., 556; *Brewer* v. *Harvey,* 72 N. Car., 176; *Trimmer* v. *Danby,* 25 L. Jour., Equity, 424.

5. Viewed in whatever light, there never was any legal transfer of the forty shares of insurance stock from the testator to the plaintiff, as the charter and by-laws of the company provide that said "stock is transferable only at the office of said company by said Tyler or his certain attorney, on surrender of this certificate." *Shipman* v. *Ætna Ins.*

*Co.*, 20 Conn., 246; *Minor* v. *Rogers*, 40 id., 519; 3 Wait's Actions and Defenses, 491. "The settled law of Connecticut is, that where such clauses are found in the charter and by-laws or either (i. e. regulations *de* transfer of stock), the transfer is invalid, and of no effect for *any* purpose, unless made or registered on the books of the company." Field on Corp., § 308. See also *Marlboro' Manf. Co.* v. *Smith*, 2 Conn., 579; *Northrop* v. *Newtown & Bridgeport Turnp. Co.*, 3 id., 544; *Northrop* v. *Curtis*, 5 id., 246; *Oxford Turnp. Co.* v. *Bunnell*, 6 id., 552; *Howe* v. *Starkweather*, 17 Mass., 243; *Palmer* v. *Merrill*, 6 Cush., 286; Ang. & A. on Corp., § 353.

6. Viewed in the light of a contract to transfer these forty shares in consideration of services, parol evidence is not admissible as being within the statute of frauds. *North* v. *Forest*, 15 Conn., 404; *Tisdale* v. *Harris*, 20 Pick., 9; *Dole* v. *Stimpson*, 21 id., 387; Story on Sales, §§ 263, 276. If any part of the supposed contract is within the statute, the whole is. Browne on Frauds, § 140, *et seq.*; *Atwater* v. *Hough*, 29 Conn., 508, 515; *Howard* v. *Brower*, 37 Ohio St., 402. Part performance will not take this case out in law or equity. Browne on Frauds, §§ 118, 448, 452; *Hall* v. *Rowley*, 2 Root, 165; *North* v. *Forest*, 15 Conn., 405.

7. While at common law no delivery is necessary between the parties in the sale of a chattel, yet that rule does not prevail in cases of shares of stock or choses in action. *Howe* v. *Starkweather*, 17 Mass., 243.

8. The plaintiff's supposed agreement cannot be sustained as a declaration of trust. *Potter* v. *Yale College*, 8 Conn., 61; *Curry* v. *Powers*, 70 N. York, 212; *Young* v. *Young*, 80 id., 422; *Zimmerman* v. *Streeper*, 75 Penn. St., 147; *Richards* v. *Dalbridge*, L. Reps., 18 Eq. Cas., 11, 13; *Jones* v. *Lock*, L. Reps., 1 Cha. App., 25.

9. Whatever the nature of this supposed agreement is, it was not to take effect until the testator's death, and was therefore void, as being in the nature of a testamentary disposition, and required by our statute to be in writing. Gen. Statutes, p. 369, § 2; Perry on Trusts, § 92; *Frost* v. *Frost's Admr.*, 33 Verm., 646; *Crispin* v. *Winkleman*, 57 Iowa, 523.

10. The plaintiff having accepted the provisions of the will so far as beneficial, the doctrine of election applies, and she is estopped from claiming anything inconsistent with the will. "It is a principle of equity that a person who accepts a benefit under an instrument, must adopt the whole, giving full effect to its provisions, and renouncing every right inconsistent with it." 2 Wms. Exrs., 1441; 1 Lead. Cas. in Eq., 303; 2 Smith Lead. Cas., 653; 2 Jarman on Wills, 7; 2 Redf. on Wills, ch. 14, § 69; 2 Story Eq. Jur., §§ 1077, 1085, 1087; *Hyde* v. *Baldwin*, 17 Pick., 308; *Smith* v. *Smith*, 14 Gray, 532. As the title of record at the death of the testator was in his name, both on the certificate of the forty shares and also on the books of the company, and as the will provides that the "devises and legacies given to the plaintiff" (not including these forty shares) "are in lieu of all claims upon my estate," and "all the rest, residue and remainder, of every name, nature and description, which shall belong to me in law or equity at the time of my decease" is given to "my three brothers," it follows as a necessary sequence that the title to these forty shares passed by the will to the three brothers, and therefore by these proceedings the plaintiff is not, as regards the will, "giving full effect to its provisions." She should therefore be estopped from claiming in derogation of the will.

LOOMIS, J. Our view of the facts renders unnecessary a discussion of several interesting questions presented by the arguments of counsel. We think the plaintiff's case may well rest upon the contract relations which the finding shows existed between her and the late Mr. Tyler in his life time. The plaintiff evidently made a great personal sacrifice and rendered most valuable services, relying upon the testator's promise to compensate her amply. It will be seen that the original contract contained no reference to a will. The plaintiff did not agree to wait till the testator's death. She accepted the proposal and commenced rendering services under the inducements held out of full compensation, without any mention of the time and mode of payment.

More than five years elapsed, during which services were performed under this agreement before the testator suggested the making of his will, and then, after informing the plaintiff of certain specific bequests in her favor, he added that "he should do more for her from time to time"; and the assent of the plaintiff, which he then sought and obtained to this mode of compensation, had reference not only to the proposed bequests, but to the additional promise as well, and the latter clearly had reference to further compensation in the life time of the promiser, otherwise it could not be "from time to time." The transaction in question therefore was not void, as claimed by the defendants, because it was in the nature of a testamentary disposition.

In recognition of and in part fulfilment of his promise, the testator, about a year after the execution of his will, took the certificate for ten shares of the Ætna Life Insurance Company's stock, and handed it to the plaintiff, saying, "I give this to you," and when she tried to thank him he interrupted her by saying, "Show your thanks by doing for me." The plaintiff took the certificate and deposited it in the drawer of the safe, where she kept her own valuables.

Afterwards, in November, 1878, forty additional shares having been assigned to Mr. Tyler as the proportion of the surplus funds of the insurance company belonging to the ten original shares, he took the certificate for these forty shares and delivered it to the plaintiff, saying: "This Ætna Life Insurance stock of yours is good stock; it is all right; they give forty shares for ten; it is all the same, all the same as the ten shares; it is only a change in form and that is all; they have watered the stock; I paid nothing for it." The plaintiff took the certificate and deposited it in the drawer with the other. The court then, after finding the facts relative to the plaintiff's custody of the key to the safe, in the drawer of which these certificates were kept, adds, "that the said Tyler intended to vest in the plaintiff the ownership of the said ten shares and of the said forty

shares of Ætna Life Insurance stock, and that both said Tyler and the plaintiff understood and from and after that time supposed that the plaintiff was the owner thereof, and the plaintiff received and retained possession of the certificates. And both parties supposed the said certificates of stock were in the plaintiff's possession while in the drawer of the safe. And I find that they were in fact. The plaintiff was ignorant of the details of business, and did not know that any steps were necessary to be taken to vest the legal title to the stock in her."

Now, is there any good reason why the plaintiff should be deprived of that which both parties intended she should have and for which she rendered an equivalent? It must of course be conceded that the legal title could not pass without a formal transfer on the books of the company, but we see no good reason why the equitable title as between the parties could not vest in the plaintiff under the circumstances referred to. The fact that one of the parties has deceased is no objection to the remedy sought, for it is a settled rule that equitable remedies exist to the same extent against executors and administrators as they did against the decedent. 2 Redfield on Wills, chap. 10, § 40.

The defendants claim that, under the law that obtains in this state, where the charter and by-laws of the corporation as in this case provide for a transfer only at the office of the company by the person named or his attorney on surrender of the certificate, no assignment can be valid, or have any effect for any purpose, unless made as prescribed; and in support of this proposition they cite *Marlborough Manf. Co.* v. *Smith*, 2 Conn., 579; *Northrop* v. *Newtown*, 3 id., 544; *Northrop* v. *Curtis*, 5 id., 246; and *Oxford* v. *Bunnell*, 6 id., 552.

In some of these cases statements may be found that furnish some support for the claim. But the scope and effect of these earlier decisions are explained and limited in the later case of *Colt* v. *Ives*, 31 Conn., 25, where HINMAN, C. J., in giving the opinion, says: "The attaching creditors, who are the real parties in interest in this cause,

assume that, by a course of decisions in Connecticut, stock in a corporation is held to be so peculiar in its nature and character that no transfer can be made of it, or even any equitable interest acquired in it, as against attaching creditors, unless by an actual transfer made upon the corporation books, or recorded in them, in the mode prescribed by the charter or by-laws of the institution." Then, after citing the above cases, he adds: "These cases, and others to the same effect, being actions at law, conversant only with what at the time was considered the strict legal title to corporate stock, have necessarily no controlling force in a case depending upon equitable instead of legal principles."

If the equitable title could prevail, as it did in the case cited, as against the rights of attaching creditors, with much stronger reason, as it seems to us, should it prevail as between the immediate parties to the transaction and their representatives. We submit therefore that there is nothing in the present state of our law that prevents the adoption of the principles that obtain in other jurisdictions relative to the matter in question. These principles are well stated in Morawetz on Private Corporations, § 326, as follows: "While the consent of both parties to a contract is necessary in order to effect a novation, yet either party may bind himself by assigning to a stranger the right of enjoying his claims under the contract; and the interest of the assignees will be protected in equity as a trust, and may be enforced through the assignor. This principle has been applied in case of an assignment of shares in a corporation. A novation of the contract of the shareholders can be effected only in the manner prescribed by the charter; and an assignment of shares not executed in the manner required does not alter the relations existing between the assignor and the other members of the company. But the beneficial interest of a member may be transferred by any agreement which is binding between the parties to the assignment. A trust is thus created, and the equitable rights of the beneficiary will be protected and enforced by a court of equity."

The following are some of the cases cited by the author, and they well sustain the above proposition: *Quiner* v. *Marblehead Ins. Co.*, 10 Mass., 476; *United States* v. *Cutts*, 1 Sumner, 133; *Stebbins* v. *Phœnix Ins. Co.*, 3 Paige, 350; *Gilbert* v. *Manchester Iron Co.*, 11 Wend., 627; *Nesmith* v. *Washington Bank*, 6 Pick., 324; *Sabin* v. *Bank of Woodstock*, 21 Verm., 353; *Conant* v. *Reed*, 1 Ohio St., 298; *Baltimore &c. R. R. Co.* v. *Sewell*, 35 Maryl., 252; *Perpetual Ins. Co.* v. *Goodfellow*, 9 Misso., 149.

In *Morgan* v. *Malleson*, L. Reps., 10 Equity Cases, 475, the testator gave to his medical attendant the following memorandum: "I hereby give and make over to Dr. Morris an India bond, No. 506, value £1,000, as some token for all his very kind attention to me during my illness. Witness my hand this 1st day of August, 1868. *John Saunders.*" Now, although the legal title to this bond could be transferred only by delivery, and although it remained in the possession of Saunders and there was no consideration, yet the court, through Lord ROMILLY, M. R., said: "I am of opinion that the writing signed by Saunders is equivalent to a declaration of trust in favor of Dr. Morris. If he had said, 'I undertake to hold the bond for you,' or if he had said, 'I hereby give and make over the bond in the hands of *A*,' that would have been a declaration of trust, though there had been no delivery. This amounts to the same thing; and Dr. Morris is entitled to the bond, and to all interest accrued thereon."

If such instances are sufficient to constitute valid declarations of trust, it is difficult to see why the testator's expression—"This Ætna stock of yours is good stock; it is all right"—is not equally effective for that purpose.

But in the case at bar, in addition to declarations of trust we have an actual delivery of the certificates of stock with intention to pass the title and for a valuable consideration. In 3 Wait's Actions & Defenses, p. 491, it is said:—"The delivery of a note, bond, or certificate of stock, to a third person, with the intention to vest the right of property in the donee, (see *Dunbar* v. *Woodcock*, 10 Leigh, (Va.,) 628;

*McNulty* v. *Cooper*, 3 Gill & J., 214; *Grover* v. *Grover*, 24 Pick., 261; *Stewart* v. *Hidden*, 13 Minn., 43;) or the execution of an instrument declaring an intention to make a present gift to him, or a declaration of trust in his favor, is enough to constitute a gift which a court of equity will uphold and enforce."

Our own court recognized the same principles in *Camp's Appeal from Probate*, 36 Conn., 88, by holding that the delivery of a savings bank book under the circumstances of that case constituted a complete gift of the deposits of the money therein referred to.

But it may be suggested that the principles invoked in favor of the plaintiff can only apply where there is a valid agreement between the parties established by competent evidence, and that the agreement relied upon in this case rests entirely on parol evidence, which was objected to and ought not to have been received.

Under the authority of *North* v. *Forest*, 15 Conn., 404, we concede that the statute may apply to a contract for the sale of shares of stock in a corporation, although the contrary is now the established doctrine of the English courts, where it is placed on the ground that the shares, being choses in action, are incapable of delivery. But, while adhering to our former decision, we may well recognize the peculiar nature of the property, and hold with courts of other jurisdictions, that the delivery of the certificate is a symbolical delivery of the stock, whereby the contract becomes executed, so as to vest the equitable title. Ang. & Ames on Corporations, § 564; *Howe* v. *Starkweather*, 17 Mass., 244; *Sargeant* v. *Franklin Ins. Co.*, 8 Pick., 98; *Wilson* v. *Little*, 2 Comstock, 443.

But there is an additional answer to the objection in this case arising out of the equitable grounds on which it rests. It is the accepted construction of the statute in courts of equity that, inasmuch as its design was to furnish protection against fraud, a party cannot take shelter behind its provisions, and thereby perpetrate a fraud on the other party, either actual or constructive.

Reed *v.* Copeland.

In this case not only did the testator vest the equitable title in the plaintiff, but he must be held to have agreed to give her the legal title as well. While he held it it was in trust for the plaintiff, and at his death the same trust was cast upon his personal representatives now before this court. Any attempt on the part of the testator in life to deprive the plaintiff of this stock would have been in fraud of her rights, and it is equally so on the part of his personal representatives.

But it is said that the plaintiff having accepted the provisions of Mr. Tyler's will so far as beneficial, the doctrine of election applies, and she is estopped from claiming anything inconsistent with the will. The principle that underlies this proposition is well settled, but we do not think it applies to the case under consideration.

The true test is, whether the provisions in the will are plainly inconsistent with the claims in this suit. This stock is not specifically devised to any other person. The view we have taken shows that it is no part of the estate of the deceased. The beneficial interest was wholly in the plaintiff before the will took effect. It does not therefore, as claimed, sink into the residuum of the estate, to enhance the portion of the testator's brothers. The plaintiff does not diminish the estate by taking back her own, and so this suit is not inconsistent with that provision in the will that makes certain legacies a bar to all claims upon the estate.

For these reasons the Superior Court is advised to render judgment that the defendants execute a transfer of the fifty shares of stock to the plaintiff.

In this opinion the other judges concurred.