[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiffs Edward F. and Barbara J. Jaworski (husband and wife) have brought this action in two counts. In the first count they claim they are the absolute owners of 225 shares of Aetna Life and Casualty Company capitol stock and stock dividends accruing therefrom. They allege they acquired title to said property by inter vivos gift in May 1989 from Elsie A. Bradley (now deceased), aunt of Barbara Jaworski.
In the second count plaintiffs claim they are the absolute owners of 12 shares of ITT capital stock and stock dividends accruing therefrom. They allege they acquired title to those stocks on January 26, 1990 by inter vivos gift from Elizabeth S. Anderson (now deceased), another aunt of Barbara Jaworski. Defendants are the following: the administrator of the estate of Elsie A. Bradley who died intestate in 1989; the administrator of the estate of Elizabeth Anderson who died intestate in 1991; the executrix of the estate of Carl Anderson (a deceased brother of Elsie A. Bradley and Elizabeth S. Anderson); and several legatees or heirs at law under the estates of Elsie A. Bradley, Elizabeth S. Anderson and Carl Anderson.
Under each count plaintiffs seek a declaration that they are the absolute owners of the stock and dividends mentioned therein. After a court trial held on September 26, 1995 the court finds the following facts:
Barbara Jaworski is the niece of Elsie Bradley and Elizabeth Anderson who in 1989 were in their 80s and living together. In May of 1989 the Jaworskis went to visit Barbara CT Page 11845 Jaworski's two aunts. Elsie was ill, and thus the Jaworskis and Elizabeth went upstairs to visit her in her bedroom. While there, Elizabeth left the room and came back with a brown manila envelope. Elizabeth handed the envelope to Elsie who gave it to Mr. Jaworski. Elsie stated that she wanted the Jaworskis to have the Aetna stock which she owned and which was located in the envelope.
At the same time Elizabeth handed some papers (consisting of 12 shares of ITT stock which she owned) and stated that she wanted the Jaworskis to have those shares as well. The two aunts stated that they wanted the Jaworskis to have their stock because of what the Jaworskis had done for them.
After visiting with Elsie, the Jaworskis and Elizabeth went downstairs. At that point Mr. Jaworski told Elizabeth to hold on to the stock and said that it could be used in the event it was needed for Elsie's medical care. Elsie died on July 27, 1989, and subsequently in February of 1990 Elizabeth returned the Aetna and ITT stock to the Jaworskis and told them that she had not used them for Elsie's care. However, she asked that they not cash the stocks until after her own death. The Aetna and ITT stock were returned to the Jaworskis in an envelope which also contained the following note dated January 26, 1990: "Edward these stocks are yours to have in return for all you and Barbara done (sic) for Elsie and I (sic). Thank you. Elizabeth Anderson." (Plaintiff's Exhibit 1).
The issue under count 1 is whether a valid inter vivos gift had been made by Elsie. The issue under count 2 is whether a valid inter vivos gift had been made by Elizabeth. The court believes that the plaintiffs have proved by clear and convincing evidence that valid inter vivos gifts had been made in each case.
"To constitute a valid gift inter vivos of personal property, there must be not only a delivery of possession of the property but also an intent on the part of the donor that title shall pass immediately. . . . In determining the intent, the time when the use or the enjoyment of the property comes to the other party is not conclusive of the issue. A gift may be valid even though the original owner's intent is to postpone enjoyment of the property to a future date."Kukanskis v. Jasut, 169 Conn. 29, 34 (1975). CT Page 11846
There must be a delivery of possession, an intent on the part of the donor and an acceptance by the other. Fletcher Cyclopedia Corporation Vol. 12a, § 5682.
As to the Aetna stock, the court finds that Elsie delivered it to the Jaworskis and clearly intended that it should belong to them. Mr. Jaworski accepted the stock on behalf of himself and his wife. As to the ITT stock, the court finds that Elizabeth delivered it to the Jaworskis and clearly intended that it should belong to them. Mr. Jaworski accepted it on behalf of himself and his wife.
In February of 1989 Elsie had gone to the hospital for an operation. Upon her return home Elizabeth requested that Mrs. Jaworski help take care of Elsie. Mrs. Jaworski thus helped take care of Elsie for many weeks. She stayed overnight at the apartment for two weeks and spent at least six hours a day for many more weeks after that helping Elizabeth with her daily chores in addition to taking care of Elsie. Both Mr. and Mrs. Jaworski had been of considerable assistance to both sisters over the years. (See Exhibits A, C, and 1). It was for these reasons that the sisters intended that the Jaworskis become the owners of their stock.
As to Elsie's Aetna stock, defendants have claimed that there was no delivery by Elsie to the Jaworskis for two reasons: first, they claim there was no delivery by Elsie and/or acceptance by the Jaworskis because Mr. Jaworski had handed the envelope containing the stock to Elizabeth and told her to hold on to it in case it was needed for Elsie's medical care. Clearly, Elsie wanted the Jaworskis to have the stock and had handed it to Mr. Jaworski, which he accepted. The court heard no evidence that Elsie at any time asked for the stock back or that she even knew that Elizabeth was holding on to it. Although Mr. Jaworski had told Elizabeth she could keep possession of the stock in case of a medical need of Elsie, the court finds that the Jaworskis were the owners of the stock and they were entitled to the return of any shares not needed for Elsie's care. Second, defendants claim there was no delivery made by Elsie because she had not endorsed the certificates on the back. The court disagrees. A valid gift of shares of stock may be made by delivery of the certificate, accompanied by words of absolute and present gift, without any written assignment or endorsement. Reed v. Copeland, 50 Conn. 472, CT Page 11847 Fletcher Cyclopedia Corporations Vol. 12a, § 5683.
"Although Article 8 of the Uniform Commercial Code does not specifically cover the subject of gifts, the definition section of the Code defines the word `purchase' as including a gift and the word `purchaser' as including a donee. (General Statutes § 42a-1-201 (32, 33). The Code sets up the method of the transfer of stock." Fletcher Cyclopedia Corporations Vol. 12a, Sec. 5682. General Statutes §42a-8-307 (of the commercial code) provides:
 "If a certified security in registered form has been delivered to a purchaser without a necessary endorsement he may become a bona fide purchaser only as of the time the endorsement is supplied; but as against the transferor, the transfer is complete upon delivery and the purchaser has a specifically enforceable right to have any necessary endorsement supplied."
Under General Statutes § 42a-8-308 (8) the Jaworskis have an enforceable right to have the necessary endorsement signed by the administrator of Elsie's estate.
As to Elizabeth's ITT stock, the defendants make the same claims. They claim that there was no delivery because Mr. Jaworski had told Elizabeth to keep possession of the shares in case they might be needed for Elsie's medical care. However, it is clear that Elizabeth wanted them to have the stock, as evidenced by her delivery and note dated January 26, 1990 (Exhibit 1). Additionally, the Uniform Commercial Code provides that the Jaworskis have an enforceable right to have the stock certificates endorsed by the administrator or executor of Elizabeth's estate. As stated above, the fact that Elizabeth asked them to postpone their enjoyment of the stock did not invalidate the gift. Kukanskis v. Jasut, supra.
Accordingly, as to count 1, the court finds the issues for the plaintiffs, and declares that they are the absolute owners of 225 shares of Aetna Life Casualty stock and of all outstanding dividends accruing therefrom. As to count 2, the court finds the issues for the plaintiffs and declares that they are the absolute owners of 12 shares of ITT stock and of all outstanding dividends accruing therefrom. CT Page 11848
Judgment may enter for the plaintiffs plus costs.
Frances Allen State Trial Referee